**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------X

OANH NGUYEN,                                                    :
                                                                               :
                       Plaintiff,                       :      Civil Action No.:
                                                                               :
      v.                                                            :
                                                                               :      **COMPLAINT**
FIRST EAGLE INVESTMENT MANAGEMENT,  :
LLC, THE BLACKSTONE GROUP INC.,               :
MATTHEW MCLENNAN, KIMBALL BROOKER,:     **Jury Trial Demanded**
MATTHEW LAMPHIER, and JOHN DOES 1-10,  :
in their individual and professional capacities.       :
                                                                               :
                   Defendants.                  :
------------------------------------------------------------------------X

Plaintiff Oanh Nguyen hereby alleges through her counsel Wigdor LLP, as against

Defendants First Eagle Investment Management, LLC ("First Eagle" or the "Firm"), The

Blackstone Group ("Blackstone"), Matthew McLennan, in his individual and professional

capacities, Kimball Brooker, in his individual and professional capacities, Matthew Lamphier, in

his individual and professional capacities, and John Does 1-10, in their individual and

professional capacities (together "Defendants") as follows:

**PRELIMINARY STATEMENT**

1.      Despite working at First Eagle for 13 years, Ms. Nguyen was, like many other

women and minorities working in the financial services industry, victimized by a male-centric

environment in which she was underpaid and treated as an outsider for advocating for equal

treatment while numerous men around her have thrived and were permitted to act in a

completely unacceptable and unlawful manner.

2.      Notwithstanding the #MeToo movement and claims against a number of Wall

Street financial firms for gender related discrimination, Ms. Nguyen, 43 and of Vietnamese

descent, was subjected to treatment that violated the federal, state and city anti-discrimination laws.  Rather than do the right thing, First Eagle doubled-down and terminated Ms. Nguyen in October 2019.

3.      As set forth below, First Eagle fosters a workplace where female employees like Ms. Nguyen reach an impenetrable ceiling, unable to obtain the coveted level of portfolio manager – a title worn by "men only" at First Eagle.   Notably, it is a title bestowed overwhelmingly to "White men only."  Female and non-Caucasian, Ms. Nguyen would never fit the culture mold.

4.      First Eagle Investment Management is an investment advisory firm that boasts $101 billion in assets under management.[1]   In December 2015, formerly Arnhold and S. Bleichroeder Holdings, Inc., First Eagle was acquired by Blackstone Capital Partners and Corsair Capital.[2]

5.      Its leadership team consists of 13 men. Twelve of these 13 men are White.[3] According to its site, one White female is included along with the 13 analytical, strategic and financial male leaders.  This sole woman is the Head of Human Resources ("HR").

6.      From 2007-2019 Ms. Nguyen worked as a Research Analyst at First Eagle supporting the Firm's flagship funds.  Ms. Nguyen was responsible for the telecom, cable and media sectors and other investments in her coverage universe that represented between $5 billion and $7 billion worth of assets over the past five years.

---

[1]      https://www.feim.com/
[2]      https://www.ta.com/portfolio/investments/first-eagle-investment-management-llc
[3]      https://www.feim.com/our-firm/leadership-team

7.      In 2014, after working at First Eagle for 7 years, Ms. Nguyen had established herself as one of the best performing Research Analysts and was promoted to a Senior Research Analyst.

8.      Disgustingly, Ms. Nguyen learned in 2014 that a gross pay disparity existed between her and her male peers, most of who performed worse than her.

9.      After raising this pay disparity with First Eagle senior management, Ms. Nguyen received an increase in her compensation of more than 50%.  However, this adjustment for her underpayment was not retroactive.

10.     Worse, Ms. Nguyen's compensation was not made equal to her male peers and she continued to be underpaid for her work while her male peers, who frequently made sexist and racist comments, were rewarded with promotions and equity awards.

11.     Because Ms. Nguyen is a woman, her male supervisors believed it was acceptable to demean and humiliate Ms. Nguyen by making degrading comments such as: "**How old are you**?" "**Do you even know what we do?**" and "**You are really lucky to be here**."

12.     Ms. Nguyen raised her concerns about the internal culture and treatment of women during her employment, including about other female employees who were bullied and paid less than their male peers.

13.     The result of the complaints was hostile treatment toward Ms. Nguyen and efforts to deter Ms. Nguyen from making complaints, both through words and more subtle means of exclusion, and rejecting Ms. Nguyen's stock picks.

14.     In February 2019, Ms. Nguyen brought up the subject again to Matthew McLennan, Head of Global Value Team, and Kimball Brooker, Deputy Head of Global Value

Team, about the Firm culture and how she felt that the pay disparity still existed as her compensation remained stagnant (and in some years decreased) over the five-year period.

15.     Ms. Nguyen's complaint only led to further isolation and hostile treatment.

16.     This treatment resulted in Ms. Nguyen asking HR to retract her complaint because she feared retaliation.

17.     In October 2019, Ms. Nguyen was called into a meeting with Mr. McLennan and Mr. Brooker where she was told that First Eagle's majority owner, Blackstone was making changes to First Eagle's platform and her position would be eliminated.

18.     Unquestionably Ms. Nguyen was selected for this "change" based on her history of raising the subject of the Firm's hostile and inequitable treatment of female employees.

19.     The inequitable treatment and unlawful termination of Ms. Nguyen make clear that First Eagle's purported "Guiding Principles" that include acting with "honesty, integrity and transparency" and emphasize the "importance of being good colleagues and caring citizens, respectful of others," are a sham and do not represent the actual culture of inequality and retaliation.[4]

**APPLICABLE LAWS**

20.     Ms. Nguyen brings this action to redress the unlawful employment practices committed against her, including Defendants' discriminatory treatment towards her due to her gender, race and/or color, as well as unlawful retaliation due to her complaints of discrimination, in violation of the Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), Age Discrimination in Employment Act of 1977, as  amended, 29 U.S.C. § 621 *et seq.*, ("ADEA"), the New York State Human Rights Law, N.Y. Exec. Law §§ 290 *et seq.*

---

[4]     https://www.feim.com/our-firm/about-us

("NYSHRL") and the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101 *et seq*. ("NYCHRL").

21.     Ms. Nguyen also brings this action to redress First Eagle's discriminatory pay practices as well as retaliation for complaining about the unlawful practices, in violation of the Equal Pay Act, 29 U.S.C. § 206 *et seq*. ("EPA") and the New York State Pay Equity Law, N.Y. Lab. Law § 193 *et seq*. ("NYSPEL").

## ADMINISTRATIVE PROCEDURES

22.     Ms. Nguyen filed a charge of discrimination against the corporate Defendants with the Equal Employment Opportunity Commission ("EEOC") alleging violations of the Title VII and the ADEA.

23.     The EEOC subsequently issued Ms. Nguyen a Notice of Right to Sue ("Right to Sue") and she has asserted her Title VII and ADEA claims within 90 days of receipt of the EEOC's Notice of Right to Sue.

24.     Following commencement of this action, a copy of this Complaint will be served both on the New York City Commission on Human Rights and the Office of the Corporation Counsel of the City of New York, thereby satisfying the notice requirements of the New York City Administrative Code.

25.     Any and all other prerequisites to the filing of this suit have been met.

## JURISDICTION AND VENUE

26.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343, as this action involves federal questions regarding the deprivation of Plaintiff's rights under Title VII, ADEA and the EPA.  The Court has supplemental jurisdiction over Plaintiff's related claims arising under State and local law pursuant to 28 U.S.C. § 1367(a).

27.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 and 29 U.S.C. § 1132(e) as a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein occurred in this district.

## PARTIES

28.     Plaintiff Oanh Nguyen is a former Senior Research Analyst at First Eagle Investment Management, LLC.  At all relevant times, Ms. Nguyen met the definition of an "employee" under all applicable statutes.

29.     Defendant First Eagle Investment Management, LLC is a foreign limited liability company registered in New York, with its principal place of business located at 1345 Avenue of the Americas, 48th floor, New York, New York 10105.  At all relevant times Defendant First Eagle met the definition of "employer" under all applicable statutes.

30.     Defendant The Blackstone Group is a foreign limited liability company registered in New York, with its principal place of business located at 345 Park Avenue, New York, NY 10154.  The Blackstone Group exercises control and oversight of First Eagle as a result of investment agreements between The Blackstone Group and First Eagle.

31.     Defendant Matthew McLennan is the Head of the Global Value Team at First Eagle.  At all relevant times, Mr. McLennan met the definition of an "employer" under all applicable statutes and exercised the authority to control Ms. Nguyen's employment, including her work, assignments, pay and responsibilities.

32.     Defendant Kimball Brooker is the Deputy Head of Global Value Team at First Eagle.  At all relevant times, Mr. Brooker met the definition of an "employer" under all applicable statutes and exercised the authority to control Ms. Nguyen's employment, including her work, assignments, pay and responsibilities.

33.     Defendant Matthew Lamphier is a Portfolio Manager and Director of Research at First Eagle.  At all relevant times, Mr. Lamphier met the definition of an "employer" under all applicable statues and exercised the authority to control Ms. Nguyen's employment, including her work, assignments and responsibilities.

34.     Defendants John Does 1-10 are unknown executives associated at Blackstone that were involved in substantive decision-making about the terms and conditions of Ms. Nguyen's employment at issue in this action.

## FACTUAL ALLEGATIONS

### I.     Background

35.     Ms. Nguyen is a graduate of Wellesley College and the Fletcher School of Law and Diplomacy at Tufts University, where she was a Woodrow Wilson Fellow.

36.     After graduation, Ms. Nguyen worked two years as a Research Analyst and Trader for Wyser-Pratte Management Co., an investment management firm focused on undervalued European equities.

37.     In 2007, Ms. Nguyen began working at First Eagle as a Research Analyst covering the telecommunications, cable and media industries.

38.     Ms. Nguyen immediately made a significant contribution to the Firm's returns.

39.     By way of example only, in 2008, Ms. Nguyen recommended that First Eagle buy an initial stake in Comcast.  Today, Comcast is one of First Eagle's top five positions in its Global Value Fund and U.S. Value Fund, worth approximately $1.5 billion as of 2019, and has been a top contributor to the funds' returns.

40.     Moreover, in 2011, Ms. Nguyen recommended that First Eagle buy an initial stake in KDDI, a Japanese telecommunications operator.  The stock price has increased four

times since her initial recommendation and the investment is one of First Eagle's top positions in its Global Value Fund and its Overseas Fund, reaching $1.9 billion at its peak and was approximately $1.1 billion in 2019.

41.     In 2014, in recognition of her numerous contributions to First Eagle, Ms. Nguyen was promoted to Senior Research Analyst for First Eagle's Global Value Fund, Overseas Fund and U.S. Value Fund.  Again, Ms. Nguyen excelled in this role.

42.     By way of example only, in early 2018, Ms. Nguyen's independent thinking on an investment in the company WPP plc helped shareholders avoid massive losses by opposing the acquisition of shares in the £16 - £18 range and instead authorizing the purchase of shares at approximately £11.

43.     In fact, for the last ten years, when measured by total contributions to portfolio returns, Ms. Nguyen has consistently ranked in the top quartile of all the Analysts at First Eagle on a three, five and ten-year basis.

44.     In sum, Ms. Nguyen's loyalty and value to First Eagle during her 13 years of employment cannot be questioned.

## II.     Ms. Nguyen is Paid Less Because She is a Woman

45.     Throughout her tenure at First Eagle, Ms. Nguyen was systemically paid substantially less than her male peers at the same level for performing substantially the same work.

46.     In December 2014, Ms. Nguyen first learned about this pay disparity when she discovered that male peers were compensated significantly more than her, even though the returns on their stocks were much lower than Ms. Nguyen's.

47.     Accordingly, Ms. Nguyen spoke up about this outrageous, indefensible unequal pay.

48.     As a result of her bringing this up to management, First Eagle increased Ms. Nguyen's compensation by approximately more than 50%.

49.     First Eagle did not, however, provide Ms. Nguyen with any transparency about the unequal pay, which left her in the dark about her compensation as compared to other men, and like other female employees at the Firm, her pay disparity persisted as Ms. Nguyen continued to be systemically paid substantially less than her male peers for the remainder of her tenure at First Eagle.

50.     On information and belief, between 2013 and 2019, Ms. Nguyen's male colleagues were paid substantially more than Ms. Nguyen year after year for performing the same work, despite Ms. Nguyen having better performance than them.

51.     In February 2019, Ms. Nguyen complained to Mr. McLennan and Mr. Brooker about this systemic pay disparity and specifically noted her fears that the pay discrepancy she uncovered in 2014 was still occurring.

52.     Mr. McLennan and Mr. Brooker dismissed this complaint and conducted no investigation to remedy their unlawful pay practices.

53.     In addition, Ms. Nguyen later learned that she received substantially less in equity compensation than her peers – all of whom are men.

54.     Upon information and belief, this underpayment may be more than $1 million.

55.     In addition to Ms. Nguyen, other female Senior Research Analysts performing similar work as Ms. Nguyen have been systemically underpaid in comparison to male Research Analysts.

56.     By way of example only, Sheryl Tierney, a former female Research Analyst, made numerous complaints to HR and to Ms. Nguyen that her compensation was less than her male colleagues at her level, and was subsequently terminated in 2017.

57.     Also by way of example only, in February 2019, Shan Wang, Research Analyst of the Small Cap Value Fund and Global Value Team complained about her lack of promotion and unfair treatment as compared to male colleagues.   A few months later, Ms. Wang was terminated.

58.     Despite these female employees placing First Eagle on notice of unequal pay claims, First Eagle did nothing to remedy its unlawful unequal pay practices.  Rather, as alleged herein, First Eagle retaliated against those that dared to engage in protected speech about unequal treatment.

III.     **Ms. Nguyen is Discriminated Against Because She is an Older Asian Woman**

59.     In 2015, Ms. Nguyen was in a group meeting with Mr. McLennan regarding a potential female Asian hire wherein Julian Albertini, a male Senior Research Analyst, commented that "Asians do not come forth and say when something is wrong….I used to work with [an Asian] like that, so we should take that into consideration."

60.     Mr. Albertini said this in front of Ms. Nguyen and Ms. Wang, a Research Analyst who is of Chinese descent.

61.     Mr. Albertini has also made comments about a female colleague's breast size without any repercussions.

62.     Additionally, by way of example only, in late June 2017, Mr. Lamphier called Ms. Nguyen into his office to discuss a briefing memo and said, *inter alia*,

- **"How old are you?"**

- **"Act like an adult."**

- **"You are really lucky to be here."**

63. No female employee should have to answer how old she is or state whether she is an adult at the age of 40.

64. Ms. Nguyen complained about Mr. Lamphier's behavior and comments to HR.

65. Upon belief, at least two other Research Analysts complained about Mr. Lamphier's behavior and conduct. Incredibly, Mr. McLennan took it upon himself, not outside counsel or HR, to supposedly investigate Ms. Nguyen's allegations of discrimination.

66. In connection with his own probing, Mr. McLennan divulged to other First Eagle employees that Ms. Nguyen had complained about Mr. Lamphier to HR, which is a blatant act of retaliation.

67. This outing of Ms. Nguyen by Mr. McLennan would negatively impact her for the remainder of her time at First Eagle, resulting in the rejection of Ms. Nguyen's investment recommendations, the failure to include her in key investment decisions and providing her with performance reviews that did not accurately reflect her work.

68. Although Mr. Lamphier quietly received discipline for his conduct, it was no secret that Mr. Lamphier resented Ms. Nguyen for her complaint and felt emboldened enough to criticize Ms. Nguyen's abilities or go out of his way to try to prove her recommendations wrong. By way of example only, Mr. Lamphier complained that Ms. Nguyen was paid too much.

69. By way of example only, also in late 2017, shortly after the "change/demotion" of Mr. Lamphier's role, Mr. Lamphier scheduled numerous meetings in Japan, including meetings with companies within Ms. Nguyen's stock coverage, without inviting or consulting with Ms. Nguyen.

70.     When Ms. Nguyen approached Mr. McLennan about it on February 1, 2018, Mr. McLennan said to just give Mr. Lamphier a chance and reassured her that he was not singling her out.

71.     Afterward, Mr. Brooker and Mr. McLennan intentionally ostracized Ms. Nguyen by leaving her out of a critical meeting for the Global Value Team.

72.     In July 2018, Ms. Nguyen recommended that First Eagle add $500 million in the company Comcast Corporation.

73.     For months, Ms. Nguyen did not hear anything about whether First Eagle would accept her Comcast recommendation.

74.     Months later, in October 2018, Ms. Nguyen learned from Mr. Brooker that First Eagle indeed had purchased a stake in Comcast at approximately $35 per share for a $60 million stake - substantially less than her recommendation.

75.     Mr. Brooker's decision was made without consulting Ms. Nguyen.

76.     As of January 2020, Comcast shares had appreciated by approximately 35%, meaning that First Eagle's rejection of Ms. Nguyen's actual recommendation cost First Eagle over $150 million in potential investment returns.

77.     In yet another example, in August 2018, Ms. Nguyen recommended that First Eagle initiate a substantial stake, of approximately $500 million, in the company Charter Communications at approximately $275 per share to replace the stake they did not buy of Comcast, as the managers explained there are limits to the size of their positions.

78.     Charter Communications was a company within Ms. Nguyen's stock coverage, and she had substantial expertise in this area.

79.     First Eagle's managers, including Mr. Brooker and Mr. Lamphier, rejected Ms. Nguyen's recommendation, despite her assurances that the issues they had raised with the investment were not valid.

80.     As of January 2020, Charter Communications shares had appreciated by over 90%, meaning that First Eagle's rejection of Ms. Nguyen's recommendation cost First Eagle at least $450 million in potential investment returns.

81.     In another example, in November 2018, Mr. Lamphier weighed in on a decision with Mr. Brooker about KDDI, a Japanese telecom investment within Ms. Nguyen's stock coverage, without consulting Ms. Nguyen.

82.     Specifically, the Portfolio Managers hastily decided to sell an approximate 25% stake, or approximately $400 million, in KDDI at a low price, without consulting or informing Ms. Nguyen.

83.     To date, the Portfolio Manager's decision and Mr. Lamphier's influence, which he deliberately refused to consult Ms. Nguyen about, cost First Eagle shareholders to incur massive losses, including by more than $100 million, based on the stock's share price appreciation since the sale.

84.     Ms. Nguyen perceived that Mr. Lamphier's motives in rejecting her recommendations and leaving her out of key decisions were influenced by her gender and/or race and because she complained about him.

85.     Regardless of why, an employee in a supervisory position such as Mr. Lamphier's should never allow personal biases, or his own ego, to influence decisions that impact First Eagle and its shareholders.  Unfortunately for First Eagle, this happened on a number of occasions.

86.     For example, upon belief, Mr. Lamphier played a role or influenced decisions on

whether to promote Senior Research Analysts, including Ms. Nguyen, to Associate Portfolio Manager positions.

87.     In February 2019, five men in the Global Value Equity Team were promoted to Associate Portfolio Manager or Portfolio Manager.

88.     Ms. Nguyen was not promoted, even though several of these men had not worked at First Eagle for as long as Ms. Nguyen and did not have the contributions to returns that she did over the course of their tenure.

89.     Additionally, upon information and belief, Ms. Nguyen had a similar, if not better, dollar contribution to the portfolio than several of these men.

90.     In early 2019, Ms. Nguyen engaged in protected complaints about these discriminatory promotions, her unequal compensation and First Eagle's mistreatment of the only other female full-time equity analyst.

91.     For example, as discussed *supra*, in early February 2019, Ms. Nguyen met with Mr. McLennan and Mr. Brooker about her compensation.  Ms. Nguyen complained about her pay as compared to the men on her team.

92.     Mr. Brooker's juvenile response to this complaint included eye rolling.

93.     In this meeting, Ms. Nguyen further complained about the recent inequitable promotions and specifically asked about Mr. Lamphier's potential involvement in the promotion decisions.

94.     Mr. McLennan and Mr. Brooker became visibly upset and Mr. McLennan told Ms. Nguyen that it was his choice who to promote but did not say anything about whether Mr. Lamphier was involved in that decision.

95.     Days later, in a meeting with Mr. McLennan, Ms. Nguyen raised concerns about

another female Research Analyst, Ms. Wang.

96.     Ms. Nguyen told Mr. McLennan that she believed that some of the male Senior Research Analysts up for promotion were bullying Ms. Wang because she is a woman.

97.     When Ms. Nguyen was afraid to divulge specifics to Mr. McLennan, he became upset and told her to go to HR.

98.     Accordingly, Ms. Nguyen complained to HR.

99.     HR took no action to remedy the issues raised by Ms. Nguyen in her complaint and shortly thereafter, Ms. Wang was terminated.

100.    After her complaints in February 2019, Mr. McLennan and Mr. Brooker demeaned Ms. Nguyen during one on one conversations.

101.    By way of example only, on March 1, 2019, Mr. McLennan asked Ms. Nguyen to make a presentation to the team on Grupo Televisa, an unsuccessful investment.

102.    Meanwhile, at the same meeting, Mr. McLennan had two other team members who were being promoted, both men, present on highly successful investments.

103.    Incredulously, not long after the meeting, Mr. Brooker yelled and chastised Ms. Nguyen about an email and asked her:

- **"How long have you worked here?"**

- **"Do you even know what we do?"**

- **"Have you even read our prospectus?"**

104.    Similarly, on April 18, 2019, Mr. Brooker demeaned Ms. Wang about a research product, when he said:

- **"You are wasting my time, compliance's time, and the whole team's time."**

- **"Why are you bringing this to me?"**

15

105.     Unquestionably, Mr. McLennan and Mr. Brooker believe they are beyond accountability and are free to say or do whatever they want – at least when it comes to Asian female Research Analysts.

106.     Ultimately, as set forth above, the five individuals at the same equity analyst level as Ms. Nguyen – all men – were promoted and she was not.

107.     Moreover, Mr. McLennan continued to sideline Ms. Nguyen by assigning responsibilities that were within Ms. Nguyen's stock coverage to other employees.

108.     Ms. Nguyen also experienced increased scrutiny over her investment choices and would have to spend additional time trying to explain the investments to multiple individuals with no expertise in her sector.

**IV.     Ms. Nguyen is Unlawfully Terminated**

109.     Eventually, First Eagle, and specifically Mr. McLennan and Mr. Brooker, no longer wanted to hear about Ms. Nguyen's perception that she was treated and compensated differently than male peers based on her gender.

110.     Rather than fix these inequality issues, on October 2, 2019, Mr. McLennan and Mr. Brooker terminated Ms. Nguyen with an effective date of December 31, 2019.

111.     At the time, they also told Ms. Nguyen that they were no longer interested in the telecom, cable and media sectors.

112.     Ms. Nguyen was told that the reason for her termination was that her position was being eliminated as a result of alleged "future platform changes," to be made by Blackstone.

113.     Upon information and belief, executives at Blackstone were aware of Ms. Nguyen's complaints and that factored into the decision to terminate Ms. Nguyen.

114.     On October 31, 2019, Ms. Nguyen, through counsel, put First Eagle on notice of

her claims of discrimination, retaliation and unequal pay.

115.    On November 13, 2019, First Eagle responded by informing Ms. Nguyen that the Firm exercised its discretion to remove her from payroll before her effective termination date of December 31, 2019.

116.    After First Eagle was put on notice that this decision would constitute further retaliation against Ms. Nguyen, First Eagle rescinded the decision and continued to pay Ms. Nguyen through December 31, 2019.

### AS AND FOR A FIRST CAUSE OF ACTION
**(Discrimination in Violation of Title VII)**
***Against First Eagle and Blackstone***

117.    Plaintiff hereby repeats, reiterates and re-alleges each and every allegation as contained in each of the preceding paragraphs as if fully set forth herein.

118.    By the actions described above, among others, Defendants First Eagle and Blackstone discriminated against Plaintiff on the basis of her gender, race and/or color in violation of Title VII by denying Plaintiff the same terms and conditions of employment available to males and/or non-Asian employees, including, but not limited to, denying her the opportunity to work in an employment setting free of unlawful discrimination and terminating her employment.

119.    As a direct and proximate result of the unlawful discriminatory conduct committed by Defendants First Eagle and Blackstone in violation of Title VII, Plaintiff has suffered, and continues to suffer, monetary and/or other economic harm for which she is entitled an award of monetary damages and other relief.

120.    As a direct and proximate result of the unlawful conduct committed by Defendants First Eagle and Blackstone in violation of Title VII, Plaintiff has suffered, and

continues to suffer, severe mental anguish and emotional distress, including, but not limited to, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of monetary damages and other relief.

121.    Defendants First Eagle and Blackstone's unlawful and discriminatory actions were done with willful negligence, or recklessness, or a conscious disregard of the rights of Plaintiff or conduct so reckless as to amount to such disregard of Plaintiff's protected rights under Title VII, for which Plaintiff is entitled to an award of punitive damages.

<u>**AS AND FOR A SECOND CAUSE OF ACTION**</u>
**(Discrimination in Violation of ADEA)**
***Against First Eagle and Blackstone***

122.    Plaintiff hereby repeats, reiterates and re-alleges each and every allegation as contained in each of the preceding paragraphs as if fully set forth herein.

123.    By the actions described above, among others, Defendants First Eagle and Blackstone discriminated against Plaintiff on the basis of her age in violation of the ADEA by denying Plaintiff the same terms and conditions of employment available to younger employees, including, but not limited to, denying her the opportunity to work in an employment setting free of unlawful discrimination and terminating her employment.

124.    As a direct and proximate result of the unlawful discriminatory conduct committed by Defendants First Eagle and Blackstone in violation of the ADEA, Plaintiff has suffered, and continues to suffer, monetary and/or other economic harm for which she is entitled an award of monetary damages and other relief.

125.    As a direct and proximate result of the unlawful conduct committed by Defendants First Eagle and Blackstone in violation of the ADEA, Plaintiff has suffered, and

continues to suffer, severe mental anguish and emotional distress, including, but not limited to, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of monetary damages and other relief.

126.    Defendants First Eagle and Blackstone's unlawful and discriminatory actions were done with willful negligence, or recklessness, or a conscious disregard of the rights of Plaintiff or conduct so reckless as to amount to such disregard of Plaintiff's protected rights under the ADEA, for which Plaintiff is entitled to an award of punitive damages.

**AS AND FOR A THIRD CAUSE OF ACTION**
**(Discrimination in Violation of NYSHRL)**
***Against All Defendants***

127.    Plaintiff hereby repeats, reiterates and re-alleges each and every allegation as contained in each of the preceding paragraphs as if fully set forth herein.

128.    By the actions described above, among others, Defendants discriminated against Plaintiff on the basis of her gender, race, color and/or age in violation of the NYSHRL by denying Plaintiff the same terms and conditions of employment available to younger, males and/or non-Asian employees, including, but not limited to, denying her the opportunity to work in an employment setting free of unlawful discrimination and terminating her employment.

129.    The individual Defendants have discriminated or aided and abetted the discrimination against Plaintiff by creating, fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or to remedy the discriminatory conduct.

130.    As a direct and proximate result of the unlawful discriminatory conduct committed by Defendants in violation of the NYSHRL, Plaintiff has suffered, and continues to

suffer, monetary and/or other economic harm for which she is entitled an award of monetary damages and other relief.

131.    As a direct and proximate result of the unlawful conduct committed by Defendants in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of monetary damages and other relief.

132.    Defendants' unlawful and discriminatory actions were done with willful negligence, or recklessness, or a conscious disregard of the rights of Plaintiff or conduct so reckless as to amount to such disregard of Plaintiff's protected rights under the NYSHRL, for which Plaintiff is entitled to an award of punitive damages.

**AS AND FOR A FOURTH CAUSE OF ACTION**
**(Discrimination in Violation of NYCHRL)**
***Against All Defendants***

133.    Plaintiff hereby repeats, reiterates and re-alleges each and every allegation as contained in each of the preceding paragraphs as if fully set forth herein.

134.    By the actions described above, among others, Defendants discriminated against Plaintiff on the basis of her gender, race, color and/or age in violation of the NYCHRL by denying Plaintiff the same terms and conditions of employment available to younger, males and/or non-Asian employees, including, but not limited to, denying her the opportunity to work in an employment setting free of unlawful discrimination and terminating her employment.

135.    The individual Defendants have discriminated or aided and abetted the discrimination against Plaintiff by creating, fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or to remedy the discriminatory conduct.

20

136.    As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, monetary and/or other economic harm for which she is entitled an award of monetary damages and other relief.

137.    As a direct and proximate result of Defendants' unlawful conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of monetary damages and other relief.

138.    Defendants' unlawful and discriminatory actions were done with willful negligence, or recklessness, or a conscious disregard of the rights of Plaintiff or conduct so reckless as to amount to such disregard of Plaintiff's protected rights under the NYCHRL, for which Plaintiff is entitled to an award of punitive damages

## AS AND FOR A FIFTH CAUSE OF ACTION
### (Retaliation in Violation of Title VII)
#### *Against First Eagle and Blackstone*

139.    Plaintiff hereby repeats, reiterates and re-alleges each and every allegation as contained in each of the preceding paragraphs as if fully set forth herein.

140.    By the actions described above, among others, Defendants First Eagle and Blackstone retaliated against Plaintiff for complaining about unequal treatment on the basis of sex by altering her working conditions and terminating her employment.

141.    As a direct and proximate result of the unlawful retaliatory conduct committed by Defendants First Eagle and Blackstone in violation of Title VII, Plaintiff has suffered, and continues to suffer, monetary and/or other economic harm for which she is entitled to an award of monetary damages and other relief.

142.    As a direct and proximate result of the unlawful retaliatory conduct committed by Defendants First Eagle and Blackstone in violation of Title VII, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of monetary damages and other relief.

143.    Defendants First Eagle and Blackstone's unlawful and retaliatory actions were done with willful negligence, or recklessness, or a conscious disregard of the rights of Plaintiff or conduct so reckless as to amount to such disregard of Plaintiff's protected rights under Title VII, for which Plaintiff is entitled to an award of punitive damages.

**AS AND FOR A SIXTH CAUSE OF ACTION**
**(Retaliation in Violation of NYSHRL)**
***Against All Defendants***

144.    Plaintiff hereby repeats, reiterates and re-alleges each and every allegation as contained in each of the preceding paragraphs as if fully set forth herein.

145.    By the actions described above, among others, Defendants retaliated against Plaintiff for complaining about unequal treatment on the basis of sex by altering her working conditions and terminating her employment.

146.    The individual Defendants retaliated or aided and abetted the retaliation committed against Plaintiff by fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or to remedy the retaliatory conduct.

147.    As a direct and proximate result of the unlawful retaliatory conduct committed by Defendants in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, monetary

and/or other economic harm for which she is entitled to an award of monetary damages and other relief.

148.    As a direct and proximate result of the unlawful retaliatory conduct committed by Defendants in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of monetary damages and other relief.

149.    Defendants' unlawful and retaliatory actions were done with willful negligence, or recklessness, or a conscious disregard of the rights of Plaintiff or conduct so reckless as to amount to such disregard of Plaintiff's protected rights under the NYSHRL, for which Plaintiff is entitled to an award of punitive damages

**AS AND FOR A SEVENTH CAUSE OF ACTION**
**(Retaliation in Violation of NYCHRL)**
***Against All Defendants***

150.    Plaintiff hereby repeats, reiterates and re-alleges each and every allegation as contained in each of the preceding paragraphs as if fully set forth herein.

151.    By the actions described above, among others, Defendants retaliated against Plaintiff for complaining about unequal treatment on the basis of sex by altering her working conditions and terminating her employment.

152.    The individual Defendants retaliated or aided and abetted the retaliation committed against Plaintiff by fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or to remedy the retaliatory conduct

153.   As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, monetary and/or other economic harm for which she is entitled to an award of monetary damages and other relief.

154.   As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of monetary damages and other relief.

155.   Defendants' unlawful and retaliatory actions were done with willful negligence, or recklessness, or a conscious disregard of the rights of Plaintiff or conduct so reckless as to amount to such disregard of Plaintiff's protected rights under the NYCHRL, for which Plaintiff is entitled to an award of punitive damages.

## AS AND FOR AN EIGHTH CAUSE OF ACTION
### (Aiding and Abetting in Violation of the NYSHRL)
### *Against Defendants McLennan, Brooker and Lamphier*

156.   Plaintiff hereby repeats, reiterates and re-alleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

157.   Defendants Messrs. McLennan, Brooker and Lamphier knowingly and maliciously aided and abetted the unlawful employment practices, discrimination and retaliation against Plaintiff in violation of the NYSHRL.

158.   As a direct and proximate result of the unlawful conduct of Defendants Messrs. McLennan, Brooker and Lamphier in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm for which she is entitled to an award of damages, in addition to reasonable attorneys' fees and costs.

159.    As a direct and proximate result of the unlawful conduct of Defendants Messrs. McLennan, Brooker and Lamphier in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, mental anguish and emotional distress, for which she is entitled to an award of damages.

160.    The unlawful actions of Defendants Messrs. McLennan, Brooker and Lamphier were done with willful negligence, or recklessness, or a conscious disregard of the rights of Plaintiff or conduct so reckless as to amount to such disregard of Plaintiff's protected rights under the NYSHRL, for which Plaintiff is entitled to an award of punitive damages.

**AS AND FOR A NINTH CAUSE OF ACTION**
**(Aiding and Abetting in Violation of the NYCHRL)**
***Against Defendants McLennan, Brooker and Lamphier***

161.    Plaintiff hereby repeats, reiterates and re-alleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

162.    Defendants Messrs. McLennan, Brooker and Lamphier knowingly and maliciously aided and abetted the unlawful employment practices, discrimination and retaliation against Plaintiff in violation of the NYCHRL.

163.    As a direct and proximate result of the unlawful conduct of Defendants Messrs. McLennan, Brooker and Lamphier in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm for which she is entitled to an award of damages, in addition to reasonable attorneys' fees and costs.

164.    As a direct and proximate result of the unlawful conduct of Defendants Messrs. McLennan, Brooker and Lamphier in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, mental anguish and emotional distress, for which she is entitled to an award of damages.

165.    The unlawful actions of Defendants Messrs. McLennan, Brooker and Lamphier were done with willful negligence, or recklessness, or a conscious disregard of the rights of Plaintiff or conduct so reckless as to amount to such disregard of Plaintiff's protected rights under the NYCHRL, for which Plaintiff is entitled to an award of punitive damages.

**AS AND FOR A TENTH CAUSE OF ACTION**
**(Unequal Pay in Violation of the EPA)**
***Against Defendants First Eagle and Blackstone***

166.    Plaintiff hereby repeats, reiterates and re-alleges each and every allegation in all of the preceding paragraphs as though fully set forth herein.

167.    During the period of employment of Plaintiff, Defendants First Eagle and Blackstone were subject to the provisions of the Equal Pay Act.

168.    During that time, Defendant First Eagle required Plaintiff and other similarly situated female employees to perform the same or substantially the same job position as male employees, requiring equal skill, effort and responsibility under similar working conditions at the same establishment, and paid Plaintiff and other female employees at a rate of pay, including salary and bonus, lower than such male employees.

169.    The differential rate of pay was not part of or occasioned by a seniority system, merit system, a system based on the quantity or quality of production or upon a factor other than gender.

170.    Defendant First Eagle engaged in patterns, practices and/or policies of employment which willfully discriminated against Plaintiff and other female employees on the basis of gender by paying them a lesser rate of pay, including salary and bonus, than that paid to male employees performing the same or substantially similar job duties which require equal skill, effort and responsibility, and under the same working conditions and at the same establishments.

171.     Defendants First Eagle and Blackstone retaliated against Ms. Nguyen and other female employees for complaining about unequal pay by altering Plaintiff and other female's working conditions and terminating their employment.

172.     By the actions described above, among others, Defendants First Eagle and Blackstone have violated the Equal Pay Act.

173.     As a direct and proximate result of Defendants First Eagle and Blackstone's unlawful and discriminatory conduct in violation of the Equal Pay Act, Plaintiff and other similarly situated female employees have suffered, and continue to suffer, harm for which they are entitled to an award of monetary damages and other relief.

174.     Plaintiff is further entitled to liquidated damages, reasonable costs and attorneys' fees.

175.     Pursuant to 29 U.S.C. § 216(b), Plaintiff brings this action on behalf of herself and other female employees similarly situated.

### AS AND FOR AN ELEVENTH CAUSE OF ACTION
**(Unequal Pay in Violation of the New York State Pay Equity Law)**
***Against Defendants First Eagle and Blackstone***

176.     Plaintiff hereby repeats, reiterates and re-alleges each and every allegation in all of the preceding paragraphs as though fully set forth herein.

177.     During the period of employment of Plaintiff, Defendants First Eagle and Blackstone were subject to the provisions of the New York State Pay Equity Law.

178.     During that time, Defendant First Eagle required Plaintiff to perform the same or substantially the same job position as male employees, requiring equal skill, effort and responsibility under similar working conditions at the same establishment, and paid Plaintiff at a rate of pay, including salary and bonus, lower than such male employees.

179.    The differential rate of pay was not part of or occasioned by a seniority system, merit system, a system based on the quantity or quality of production or upon a factor other than gender.

180.    Defendant First Eagle engaged in patterns, practices, and/or policies of employment which willfully discriminated against Plaintiff on the basis of her gender and by paying Plaintiff a lesser rate of pay, including salary and bonus, than that paid to male employees performing the same or substantially similar job duties which require equal skill, effort and responsibility, and under the same working conditions and at the same establishments.

181.    Defendants First Eagle and Blackstone retaliated against Ms. Nguyen for complaining about unequal pay by altering Plaintiff's working conditions and terminating her employment.

182.    By the actions described above, among others, Defendants First Eagle and Blackstone have violated the New York State Pay Equity Law.

183.    As a direct and proximate result of Defendants First Eagle and Blackstone's unlawful and discriminatory conduct in violation of the New York State Pay Equity Law, Plaintiff has suffered, and continues to suffer, harm for which she is entitled to an award of monetary damages and other relief.

184.    Plaintiff is further entitled to liquidated damages, reasonable costs and attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter judgment in her favor and against Defendants for the following relief:

A.      A declaratory judgment that the actions, conduct and practices of Defendants complained of herein violate the laws of the United States, the State of New York and the City of New York;

B.      An award of damages against Defendants, in an amount to be determined at trial, plus interest, to compensate Plaintiff for all monetary and/or economic damages;

C.      An award of damages against Defendants, in an amount to be determined at trial, plus interest, to compensate for all non-monetary and/or compensatory damages, including, but not limited to, compensation for Plaintiff's emotional distress;

D.      An award of liquidated damages equal to the amount of Plaintiff's lost wages;

E.      An award of punitive damages in an amount to be determined at trial;

F.      Prejudgment interest on all amounts due;

G.      Post judgment interest as may be allowed by law;

H.      An award of Plaintiff's reasonable attorneys' fees and costs; and

I.      Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Dated: July 27, 2020
       New York, New York              Respectfully submitted,

                               **WIGDOR LLP**

By: _____
                                Jeanne M. Christensen
                                Bryan L. Arbeit

                               85 Fifth Avenue
                               New York, NY 10003
                               Telephone: (212) 257-6800
                               Facsimile: (212) 257-6845
                               jchristensen@wigdorlaw.com
                               barbeit@wigdorlaw.com

                               *Counsel for Plaintiff*

30